# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

2025 ND 6

Oak Reile,                                                    Appellant

v.

State of North Dakota,
by and through Workforce
Safety and Insurance,                                        Appellee

and

Core Mark International, Inc.,                               Respondent

No. 20240135

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Stephannie N. Stiel, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice.

Daniel E. Phillips, Fargo, ND, for appellant.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellee.

**Crothers, Justice.**

[¶1] Oak Reile appeals from a district court judgment affirming an administrative law judge's decision that Reile's medical condition is not a compensable injury under a Workforce Safety and Insurance regulation. Reile challenges the validity of the regulation, which relates to the standard for establishing a psychological condition was caused by a physical work injury. We hold WSI exceeded its statutory authority when it promulgated the regulation, N.D. Admin. Code § 92-01-02-02.5, and consequently the regulation is invalid. Absent the regulation, the ALJ determined Reile would be entitled to benefits under the applicable statute. The ALJ's decision to affirm WSI's denial of benefits despite Reile being statutorily entitled to them is not in accordance with the law. We reverse the judgment.

I

[¶2] Reile was employed as a delivery driver by Core Mark International, Inc. He fell off a loading ramp while working and fractured his cervical spine. He underwent surgery in North Dakota and was transferred by air ambulance to Colorado for care at an acute inpatient rehabilitation unit for spinal cord injuries. WSI approved benefits for medical conditions including cervical vertebrae fractures, quadriplegia, neuromuscular dysfunction of bladder and neurogenic bowel. Reile was discharged from the rehabilitation unit three months after the accident. His main method of mobility upon discharge was a wheelchair. Roughly a year later he requested psychological treatment be added to his workers' compensation claim based on a diagnosis of adjustment disorder with depressed mood. WSI denied Reile's claim for benefits, and he requested reconsideration.

[¶3] WSI sought an independent medical review from Dr. Joseph Burgarino. WSI sent a letter to Dr. Burgarino informing him of the statutory requirements for a psychological condition to be compensable. The letter explained that to

1

"assist with the application, the North Dakota Administrative Code has defined 2 terms in the statute above." The letter quoted N.D. Admin. Code § 92-01-02-02.5, which defines the statutory term "mental or psychological condition" as requiring proof the condition "is the physiological product of the physical injury." The letter also defined the statutory term "other contributing causes" to include certain circumstances "that generally accompany work-related injuries," like "loss of function," "disruption to lifestyle," and "compromised ability," among others. The letter instructed Dr. Burgarino these types of "other contributing causes" cannot be the source of a compensable psychological condition. WSI instructed Dr. Burgarino that, if there are other contributing causes, to "compare those causes to the physical injury as the physiological product of the condition."

[¶4] Dr. Burgarino provided WSI with a report opining "the percentage of Mr. Reile's physical condition as the physiological cause of the depressive disorder . . . is 0%." He explained "the spinal cord injury itself, the damage to cervical spinal cord neurons and sensory and motor pathways, could not in and of themselves create Mr. Reile's depressive conditions." Instead, he identified causes of Reile's condition as "significant grief related to the loss of sensory and motor function sustained as related to the subject cervical spinal cord injury" and "the significant overwhelming stress of dealing with the psychological sequelae of chronic pain and loss of motor and sensory function . . . ."

[¶5] WSI issued another order denying benefits. Reile requested a rehearing. During the administrative hearing, Reile, his wife, and a WSI case manager testified. The ALJ received physician letters submitted by Reile opining his depressive disorder is a physiological product of his spinal cord injury. The ALJ also received a transcript of a deposition given by Dr. Burgarino. In his deposition, Dr. Burgarino admitted Reile's condition is "one hundred percent" the result of the "work injury and the spinal cord damage," but later clarified his answer was not regarding the "physiological basis of the spinal cord injury," but instead the "depression is one hundred percent the cause of the, of his emotional reaction to the overwhelming stress."

2

[¶6] The ALJ issued an order affirming WSI's decision denying benefits, concluding: "The greater weight of the evidence indicates that Reile's 'adjustment disorder with depressed mood' was a result of his May 26, 2020, work injury. However, the greater weight of the evidence does *not* establish that Reile's psychological condition is the 'physiological product of the physical injury.'" (Emphasis in original.) The ALJ discounted Reile's physician letters because there was no MRI imaging of Reile's brain and no evidence he sustained a brain injury. The ALJ determined Reile's condition is compensable under the statute but, because his condition does not meet requirements of the administrative rule promulgated by WSI, he is not entitled to benefits. The district court affirmed the ALJ's decision. Reile appeals.

II

[¶7] Reile argues WSI exceeded its authority when it promulgated N.D. Admin. Code § 92-01-02-02.5. He asserts the regulation is inconsistent with statutory law. Reile identifies evidence indicating the cause of his depressive disorder is his physical work injury and the bodily limitations accompanying it. He claims he has proven his psychological condition is compensable under the statute. Reile argues the ALJ erred by affirming WSI's denial of benefits despite deciding Reile met his statutory burden.

[¶8] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs appeals from administrative orders. *State ex rel. Workforce Safety & Ins. v. Kringlie*, 2024 ND 26, ¶ 7, 2 N.W.3d 709. Under N.D.C.C. §§ 28-32-46 and 28-32-49, a reviewing court must affirm an administrative order unless:

> "1. The order is not in accordance with the law.
>
> 2. The order is in violation of the constitutional rights of the appellant.
>
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.

3

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28-32-46.

[¶9]   This Court reviews the administrative order but gives the district court's analysis "respect if its reasoning is sound, because the legislatively-mandated district court review cannot be ineffectual." *Kringlie*, 2024 ND 26, ¶ 7 (cleaned up) (quoting *Elshaug v. Workforce Safety & Ins.*, 2003 ND 177, ¶ 12, 671 N.W.2d 784). Review of an administrative order is "limited." *Sandberg v. N.D. Workforce Safety & Ins.*, 2023 ND 76, ¶ 6, 989 N.W.2d 460. Courts cannot make independent factual findings and "must decide only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Id.* at ¶ 7. Legal issues are reviewed de novo. *Id.*; *see also Kringlie*, at ¶ 8 (stating no deference will be given to an independent administrative law judge's legal conclusions).

[¶10] Claimants for workers' compensation benefits bear the burden of proving by a preponderance of the evidence they have suffered a compensable injury. N.D.C.C. § 65-01-11. The term "compensable injury" is defined to mean "an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." N.D.C.C. § 65-01-02(11). Claimants must prove a "causal connection"

between the work injury and the condition for which benefits are sought. *Davenport v. Workforce Safety & Ins. Fund*, 2013 ND 118, ¶ 13, 833 N.W.2d 500. "'Although it is not necessary to show that the employment was the sole cause of the injury, to establish a causal connection the claimant must demonstrate that his employment was a substantial contributing factor to the disease or injury.'" *Id.* (quoting *Bruder v. Workforce Safety & Ins.*, 2009 ND 23, ¶ 8, 761 N.W.2d 588).

A

[¶11] Reile argues WSI exceeded its authority when it promulgated N.D. Admin. Code § 92-01-02-02.5, which defines the terms "mental or psychological condition" and "other contributing causes" as they are used in N.D.C.C. § 65-01-02.

[¶12] Under N.D.C.C. § 65-02-08(1), WSI "shall adopt rules necessary to carry out" the provisions of N.D.C.C. tit. 65. "The authority of an administrative agency to adopt administrative rules is authority delegated by the legislative assembly." N.D.C.C. § 28-32-02(1). We have long recognized "there is an implied exclusion of each branch from the exercise of the functions of the others" because the three branches of government are co-equal. *State ex rel. Spaeth v. Meiers*, 403 N.W.2d 392, 394 (N.D. 1987). "The Legislative Assembly may not delegate to another body the power to make law—to legislate—but it may bestow authority to execute the laws it enacts." *N.D. Legis. Assembly v. Burgum*, 2018 ND 189, ¶ 46, 916 N.W.2d 83.

> "While administration and legislation are quite distinct powers, the line which separates exactly their exercise is not easy to define in words. It is best recognized in illustrations. Undoubtedly the Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and particularize, they would miss sufficiency both in provision and execution."

5

*Trinity Med. Ctr. v. N.D. Bd. of Nursing*, 399 N.W.2d 835, 841 (N.D. 1987) (cleaned up) (quoting *Mut. Film Corp. v. Indus. Comm'n*, 236 U.S. 230, 245 (1915)).

[¶13] A properly promulgated regulation has "the force and effect of law." N.D.C.C. § 28-32-06. A regulation that "exceeds or supersedes an agency's statutory authority or conflicts with the statute it implements" is "void or invalid." *Sloan v. N.D. Workforce Safety & Ins.*, 2011 ND 194, ¶ 10, 804 N.W.2d 184. "The rationale for this principle is that allowing an administrative agency to promulgate rules which include substantive matters not included in the statute under which it is acting constitutes an improper delegation of legislative power." *Moore v. N.D. Workmen's Comp. Bureau*, 374 N.W.2d 71, 74 (N.D. 1985).

> "Since the power to make regulations is administrative in nature, legislation may not be enacted under the guise of its exercise by issuing a 'regulation' which is out of harmony with, or which alters, extends, or limits, the statute being administered, or which is inconsistent with the expression of the lawmakers' intent in other statutes. The administrative officer's power must be exercised within the framework of the provision bestowing regulatory powers on him and the policy of the statute which he administers."

*Id*. (cleaned up) (quoting *Medical Props., Inc. v. N.D. Bd. of Pharmacy*, 80 N.W.2d 87, 90 (N.D. 1956)). Whether an administrative agency has exceeded its statutory authority is a question of law fully reviewable on appeal. *Sloan*, at ¶ 10.

1

[¶14] The statute and regulation at issue here provide what a worker must prove to establish his or her mental or psychological condition is compensable. Under N.D.C.C. § 65-01-02(11)(a)(6), a compensable injury includes:

> "A mental or psychological condition caused by a physical injury, but only when the physical injury is determined with reasonable medical certainty to be at least fifty percent of the cause of the condition as compared with all other contributing causes combined, and only when the condition did not pre-exist the work injury."

The term "compensable injury" is defined to exclude "[a] mental injury arising from mental stimulus." N.D.C.C. § 65-01-02(11)(b)(10).

[¶15] In *Davenport v. Workforce Safety & Ins. Fund*, 2013 ND 118, ¶ 17, we interpreted these provisions to preclude benefits when there was an "indeterminate relationship" between a "work situation" and a mental or psychological condition. A claimant received benefits for injuries he sustained after a door struck him and again after he slipped and fell. *Id.* at ¶¶ 2-3. His medical provider placed him on a work restriction. *Id.* at ¶ 3. He later sought benefits for anxiety and depression claiming his supervisor caused him stress by failing to accommodate his injuries. *Id.* at ¶ 4. We affirmed denial of his claim explaining stress caused by a work situation is insufficient to establish entitlement to benefits under N.D.C.C. ch. 65-01:

> "The plain language of those provisions requires a physical injury to be at least 50 percent of the cause of a mental or psychological condition and contemplates a comparative assessment of other causes contributing to a mental or psychological condition. That language authorizes benefits only when at least a 50 percent causal connection exists between the claimant's physical injury and mental or psychological condition and does not permit benefits for an indeterminate relationship between a claimant's work situation and the claimant's mental or psychological condition."

*Davenport,* at ¶ 17.

[¶16] After our decision in *Davenport*, WSI promulgated N.D. Admin. Code § 92-01-02-02.5, the regulation at the center of this dispute, which is titled "Contributing cause of mental or psychological condition defined." It states:

> "1.   'A mental or psychological condition' must be directly caused by a physical injury. To be directly caused it must be shown with objective medical evidence that the mental or psychological condition is the physiological product of the physical injury.

2. 'Other contributing causes' include emotional circumstances that generally accompany work-related injuries, such as the loss of function, loss of self-esteem, loss of financial independence, divorce, loss of career or employment position, disruption to lifestyle or family units, anxiousness, uncertainty, or compromised ability to participate in lifestyles, hobbies, or pastimes."

[¶17] In *Provins v. Workforce Safety & Ins. Fund*, 2022 ND 213, 982 N.W.2d 559, we addressed the "directly caused by" language in N.D. Admin. Code § 92-01-02-02.5(1). A worker was injured when a trailer fell on him. *Provins,* at ¶ 2. He sustained physical injuries, including broken ribs and a liver contusion, and was also diagnosed with PTSD. *Id.* WSI approved benefits for the bodily injuries but denied benefits for the mental condition. *Id.* An ALJ affirmed finding the claimant had not proven his physical injury caused his mental condition. *Id.* at ¶ 22. The ALJ reasoned the claimant would have suffered PTSD even if he was not physically injured, noting he was "caught under a 2,000 pound trailer" and "the doctors providing opinions in this case all agreed PTSD is caused by exposure to a life-threatening incident." *Id.* On appeal, the claimant argued the phrase "directly caused by" in N.D. Admin. Code § 92-01-02-02.5(1) was inconsistent with the "at least 50 percent of the cause" language provided by statute. *Id.* at ¶ 14. We disagreed, noting the statutory language focuses on the physical injury as opposed to other indirect causes, and thus the regulation's use of the phrase "directly caused by" was consistent with the statute. *Id.* at ¶¶ 16-17. We expressly held: "we conclude the phrase 'directly caused by,' as used in N.D. Admin. Code § 92-01-02-02.5, is not at odds or inconsistent with the 'cause of the condition' language in N.D.C.C. § 65-01-02(10)(a)(6)." *Id.* at ¶ 17.

[¶18] WSI argues that in *Provins* we "decided there is no conflict between WSI's administrative rule and the compensability statute." WSI's characterization of our decision is overly broad. The issues Reile raises concerning the regulation's "physiological product" requirement and the regulation's definition of "other contributing causes" were not decided in *Provins*. Moreover, WSI urged us to affirm the denial of benefits in *Provins* because the condition was caused by a "work event" and "there no longer remains any physical injury." *Provins*, 2022

ND 213, ¶ 21. The facts in this case, and WSI's position, are different. WSI does not dispute Reile's condition is a result of his physical work injury and not just a work situation. WSI expressly acknowledges the "stress caused by the changes that occurred to Reile's lifestyle after his work injury is evident in the record as the main cause of his psychological distress" and the "medical records document the stress was in coping from the adaptation to the injury and changes in his lifestyle." WSI nonetheless argues Reile is not entitled to workers' compensation because, under its regulation, he has not proven his condition is a "physiological product" of his fractured cervical spine and also that circumstances related to his physical injury like loss of bodily function and disruption to lifestyle cannot be considered. In WSI's words, "a psychological reaction to work related injuries" is not sufficient. Contrary to WSI's assertion, we did not address these issues in *Provins*.

2

[¶19] Whether WSI acted beyond the authority delegated by the legislature depends on the scope of the legislature's delegation. The legislature has delegated authority for WSI to adopt rules on a number of specific topics. *See, e.g.,* N.D.C.C. § 65-01-08 (to adopt rules that "further define client company and staffing service"); N.D.C.C. § 65-02-08(3) (to adopt rules relating to compensation of claimants' attorneys); N.D.C.C. § 65-02-20 (to adopt rules relating to disputes concerning managed care programs); N.D.C.C. § 65-03-01 (to issue workplace safety regulations); N.D.C.C. § 65-05-01.1 (to adopt rules relating to claims concerning pneumoconiosis); N.D.C.C. § 65-05-12.2(5) (to adopt rules related to evaluation of permanent impairment claims); N.D.C.C. § 65-05-20.1(5) (to adopt rules related to a scholarship fund); N.D.C.C. § 65-05-36 (to issue rules related to a preferred worker program); N.D.C.C. § 65-05.1-02(4) (to issue rules related to rehabilitation services); N.D.C.C. § 65-06.2-06 (to issue rules related to inmates engaging in work in prison).

[¶20] We have upheld regulations WSI promulgated consistent with specific delegations of legislative power. For example, in *Sloan v. North Dakota Workforce Safety & Insurance*, 2011 ND 194, ¶ 7, a statute required WSI to promulgate rules

9

governing permanent impairment evaluations. WSI promulgated a regulation that limited the extent to which pain could be considered. *Id.* at ¶ 8. We upheld the regulation explaining the legislature "plainly required WSI to adopt regulations to govern permanent impairment evaluations" and the language of the delegation allowed WSI "to adopt rules for determining the appropriate range of percentages for pain impairment." *Id.* at ¶ 14. Similarly, in *Little v. Traynor*, 1997 ND 128, ¶ 1, 565 N.W.2d 766, we upheld a WSI regulation capping claimant attorney fees. We explained the "Legislature specifically directed the Bureau to establish, by administrative rule, a reasonable maximum hourly rate and a maximum fee to compensate an injured employee's attorney for legal services." *Id.* at ¶ 9 (cleaned up).

[¶21] However, even when the legislature delegates authority to promulgate rules on a specific topic, the regulation cannot substantively alter statutory law. For example, in *Moore v. North Dakota Workmen's Compensation Bureau*, 374 N.W.2d at 73, the legislature delegated authority to WSI to "specify the amount allowable" for attorney fees in workers' compensation proceedings, and the legislature instructed WSI to "pay the same." WSI adopted a regulation limiting payment of attorney fees to the scope of time "a claim is denied or reduced." *Id.* at 74. On appeal, we explained an administrative rule cannot "include substantive matters not included in the statute" because that would constitute "an improper delegation of legislative power." *Id.* We said that "where a right is granted by statute, the officer administering such statute may not by regulation add to the conditions of that right a condition not stated in the statute." *Id.* (cleaned up) (quoting *Med. Props.,* 80 N.W.2d at 90). We invalidated the regulation because the agency had "no statutory authority" to impose additional restrictions. *Moore*, at 73. Similarly, in *Little v. Tracy*, 497 N.W.2d 700 (N.D. 1993), a statute allowed workers' compensation claimants to elect their claim be submitted to binding arbitration. *Id.* at 703. WSI adopted a regulation that gave employers the right to refuse the claimant's arbitration election. *Id.* We noted the statute was silent about whether an employer had a right to refuse arbitration. *Id.* We explained "the law is what the Legislature says, not what is unsaid," and

we invalidated the regulation as being inconsistent with the statutory right of an employee to elect arbitration. *Id.* at 705-06.

3

[¶22] The legislature has not specifically authorized WSI to promulgate rules regulating the proof required to establish compensability for a mental or psychological condition. The law cited in the regulation as authority for this regulation is N.D.C.C. § 65-02-08, which states: "The organization shall adopt rules necessary to carry out this title." When the regulation is compared to the relevant statute, WSI exceeded the limited delegation of authority. The regulation alters the law in substantive ways. It requires claimants prove a "physiological" nexus between their mental condition and work injury, and it removes from consideration aspects of physical injuries, such as "loss of function" and "compromised ability," by defining them as "emotional circumstances." Section 65-01-02(11), N.D.C.C., does not require proof of this type of nexus or preclude consideration of these aspects of physical injuries. The regulation imposes specific burdens and limitations not present in the statute.

[¶23] WSI argues the regulation is permissible because it serves to clarify the law relating to psychological conditions and eligibility for workers' compensation benefits. Eligibility for workers' compensation benefits is a policy consideration for the legislature. *See Baldock v. N.D. Workers Comp. Bureau*, 554 N.W.2d 441, 446 (N.D. 1996) (stating "it is proper for the Legislature to strike a balance between providing adequate benefits to injured employees while also maintaining the fiscal soundness of the workers' compensation fund"); *Haney v. N.D. Workers Comp. Bureau*, 518 N.W.2d 195, 201 (N.D. 1994) (explaining the legislature's decision to extend workers' compensation coverage to a group is a matter of legislative grace). To the extent the statute requires clarification, it is not within the purview of the executive branch to provide it. "[I]t is axiomatic that an administrative agency's duty is to administer the law, while it is the exclusive province of this Court to breath life into it and determine its meaning in settling disputes." *Lawson v. N.D. Workmen's Comp. Bureau*, 409 N.W.2d 344, 347 (N.D. 1987). Even so, we are mindful that the "function of the courts is to

11

interpret the law, not to legislate." *Olson v. Workforce Safety & Ins.*, 2008 ND 59, ¶ 23, 747 N.W.2d 71. After reviewing Reile's arguments, the legislature's limited delegation of authority, relevant statutory law, and the regulation, we are persuaded WSI exceeded the scope of its authority. We hold N.D. Admin. Code § 92-01-02-02.5 is invalid.

B

[¶24] Reile argues evidence proves his physical work injury is at least 50% the cause of his depressive disorder. The ALJ found Reile was not entitled to benefits based on WSI's regulation, explaining: "If N.D.C.C. § 65-01-02(11) were the only applicable statute, Reile's treatment for adjustment disorder with depressed mood should be covered." As we have explained, N.D. Admin. Code § 92-01-02-02.5 is invalid. Based on our review of the record, a reasoning mind reasonably could determine the ALJ's findings concerning the cause of Reile's psychological condition were proven by the weight of the evidence. *See* N.D.C.C. § 28-32-46(5); *Sandberg*, 2023 ND 76, ¶ 7 (providing the standard for reviewing administrative findings). The ALJ's order affirming WSI's decision denying Reile benefits despite finding he is statutorily entitled to them is not in accordance with the law.

III

[¶25] WSI exceeded the scope of the legislature's delegation of authority when it promulgated N.D. Admin. Code § 92-01-02-02.5. Consequently, the regulation is invalid. The ALJ's order affirming WSI's decision denying benefits despite finding Reile is statutorily entitled to them is not in accordance with the law. The judgment is reversed.

[¶26] Jon J. Jensen, C.J.
        Daniel J. Crothers
        Jerod E. Tufte
        Douglas A. Bahr
        William A. Neumann, S.J.

[¶27] The Honorable William A. Neumann, S.J., sitting in place of McEvers, J., disqualified.